**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

PAUL J. HUDSON, as personal representative
to the Estate of Eleanor Hudson,

                              Plaintiff,

         - v -                                    Civ. No. 1:03-CV-172
                                                          (TJM/RFT)

INTERNAL REVENUE SERVICE
                              Defendant.

**APPEARANCES:**                    **OF COUNSEL:**

OFFICE OF PAUL S. HUDSON, P.C.      PAUL S. HUDSON, ESQ.
For Plaintiff
4411 Bee Ridge Road #274
Sarasota, Florida 34233

UNITED STATES DEPARTMENT            BARTHOLOMEW CIRENZA, ESQ.
OF JUSTICE
For Defendant
555 Fourth Street, N.W.
Room 7814
Washington D.C. 20001

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION  and ORDER

        This matter comes before this Court based upon a referral from the Honorable Thomas J.

McAvoy, Senior United States District Judge.  Dkt. No. 36, Dec. & Order, dated Dec. 8, 2006.  The

Order of referral asks this Court to recommend whether (1) the stay of this case should be lifted, (2)

the instant action should be consolidated with *United States Dep't of Justice v. Paul S. Hudson*,

1:06-CV-763, and (3) monetary sanctions should be assessed against Plaintiff for failure to comply

with an Order, dated March 23, 2006.  *Id*. at p. 4.

        On December 20, 2006, a telephone conference was convened to discuss these issues and

1

others.  After this telephonic conference, this Court issued a Text Order establishing dates for the parties to brief all of these issues.  Dkt. No. 38, Text Order, dated Dec. 20, 2006.  Both parties have complied with the Text Order's directive and filed their respective Memorandum of Law.  Dkt. Nos. 39, Pl.'s Lt.-Mot., dated Jan. 5, 2007 (moving for consolidation), 40, Def.'s Lt.-Br., dated Jan. 10, 2007, 41, Pl.'s Mem. of Law, dated Jan. 17, 2007, & 42, Paul S. Hudson, Esq., Aff., dated Jan. 17, 2007, with Ex.

We will address the above issues *seriatim*.

## I.  CASE HISTORY

Unusually the Court would presume familiarity with the facts of this case, however, we believe a brief recitation of the more salient facts would be helpful in our discussion.  We must also take into consideration that there is a related bankruptcy case, which is currently on appeal.  *See United States Dep't of Justice v. Hudson*, Civil Case No. 06-CV-763 (FJS).  It appears that these parties have been litigating matters for more than a decade.  The initiation of this overall, all consuming, and never-ending litigation apparently began in the Bankruptcy Court in the Northern District of New York.  Bkrptcy. Case No. 00-11683.  An Order of the Bankruptcy Court has been appealed to the District Court and the Honorable Frederick J. Scullin, Jr., Senior District Court Judge, has been assigned to decide the appeal.  As identified above, Judge McAvoy is the District Judge assigned to decide this matter, and because the facts of the bankruptcy matter and this litigation may be inextricably interlaced, hence the discussion on whether these matters should be consolidated.

## A.  Bankruptcy Case

Without perusing too deeply into the pleadings and memoranda of law filed with the Bankruptcy Court, succinctly, Attorney Paul S. Hudson filed for bankruptcy in the District Court of Maryland, which was subsequently transferred to the Northern District of New York.  Bkrptcy Case. No. 00-11683.[1]  The Internal Revenue Service (IRS) filed a proof of claim and Hudson filed objections thereto.  Discovery ensued and upon conclusion of discovery each party filed a cross motion for summary judgment.  Dkt. No. 40 at p. 2.

Shortly after the filing of a bankruptcy petition and objections to a creditor's claim, on or about January 3, 2000, the parties entered into a settlement agreement.  Brkptcy Case Dkt. No. 00-11683, Mem.-Dec. & Order, dated May 16, 2006, at p. 2.  Certain contested issues evolved around the settlement agreement and its corresponding tax consequences.  Hudson's underlying objections were that IRS's claim should be disallowed and a trust fund recovery penalty ("TFRP") should not be imposed.  By an Order, dated November 30, 2004, the Honorable Robert Littlefield, United States Bankruptcy Judge, held that the interest on the TFRP should be partially disallowed.  *Id*.  Hudson claimed that he had overpaid taxes for the tax years 1994, 1995, and 1997, and is entitled to a refund.  *Id*.  In his view, said overpayment or refund should be an offset against the IRS claim.  The IRS disagreed.  Thus, another round of summary judgment motions in the bankruptcy case ensued and the Bankruptcy Judge found, *inter alia*, that additional credits and offsets would not be granted, however, Hudson was a prevailing party as to previous summary judgment motions and therefore entitled to fees and costs.  *Id*. at p. 14.  This May 16, 2006 Memorandum-Decision and Order and the previous interlocutory Orders are the subject of the appeal presently before Senior District Judge

---

[1] This matter probably started with the bankruptcy of Paul S. Hudson's business, Kent & Haroldsen Associates, Inc., in 1995, and escalated from there.  *In re Kent & Haroldsen Assocs, Inc*., Bkrptcy Case No. 95-10607; *Hudson v. IRS*, Civil Case No. 03-cv-172,  Dkt. No. 1, Compl.

Scullin. Dkt. No. 40 at p. 2.[2]

### B.  Present Litigation

The allegations of the current litigation are concomitant to the bankruptcy litigation.  Eleanor Hudson commenced this action because, as she claims, she was assessed as a responsible person for the TFPR arising out of the *Kent & Haroldsen Assocs., Inc*. Bankruptcy Case and a lien was improvidently levied against her property.  Dkt. No. 1, Compl. at ¶ 6.  Eventually the parties entered into a settlement of the IRS claim.  *Id*. at ¶ 7.  However, the IRS assessed interest and penalties on the settlement amount, which Eleanor Hudson, now her estate, claims was improper.  *Id*. at ¶ 9. Later, Eleanor Hudson learned that she and her husband made overpayments on their taxes, were due a refund, and sought to have the overpayment offset against the principal of the settlement agreement.  *Id*. at ¶¶ 12 & 14.  Now the estate seeks, *inter alia*, to have the IRS liens discharged, her portion of any tax liability deemed paid, and the return of a tax refund in the amount of $6,000.  *Id*. at Wherefore Clause.

Cross Motions for Summary Judgments were filed in this case.  *See generally* Dkt. Nos. 8, 12-17, & 20-23.  By a Memorandum-Decision and Order, dated March 25, 2004, Senior District Judge McAvoy denied the IRS's Motion and granted in part and denied in part Hudson Estate's Cross Motion.  Dkt. No. 24.  The gist of Judge McAvoy's Order is that, pursuant to the Stipulation of Settlement, the Hudson Estate's total liability to the IRS as of January 2, 2000, with interest and penalties is $30,838.49.  *Id*. at p. 25.  Further, the District Court directed that discovery be pursued

---

[2]  The IRS has appealed the Bankruptcy Court's Decision and Order, dated September 7, 2004, and the Memorandum-Decision and Order, dated November 30, 2004.  One of the grounds for appeal is that Bankruptcy Judge Littlefield erroneously adopted the reasoning of Senior District Judge McAvoy's March 25, 2004 Order in this case.  *See infra* Part I.B.  The appeal before Senior Judge Scullin is fully briefed and awaiting a decision.

first and then final summary judgment motions may be filed.  *Id*.

Although the core facts and issues are the same in the bankruptcy and this case, the cases became more interlocked when Hudson and the IRS asked Judge McAvoy to stay this case pending a decision from the Bankruptcy Court primarily on the pre-settlement, accrued interest liability issue.  Dkt. Nos. 31, Def.'s Status Report, dated Feb. 17, 2006, 32, Pl.'s Lt.-Mot., dated Feb. 21, 2006.  Accordingly, Judge McAvoy granted the stay and further ordered that "Plaintiff shall submit a Status Report . . . no later than four (4) months from the date of this Order, and every four (4) months thereafter if the matter continues to be stayed . . . . **Failure to comply with this Order may subject [Plaintiff] to sanctions under Rule 16(f), Federal Rules of Civil Procedure**."  Dkt. No 33, Order, dated Mar. 23, 2006 (emphasis added).

Pursuant to the March 23, 2006 Order, Hudson was mandated to serve a Status Report on or about July 24, 2006.  *Id*.  No Status Report was received by the Clerk of the Court by that date.  In fact, by November 17, 2006, no status report had been received, therefore, the District Court issued an Order to Show Cause why this case should not be dismissed for failure to diligently prosecute as directed by the Court's March 23rd Order.  Dkt. No. 34, Ct.-Mot., dated Nov. 17, 2006.  In essence, this matter was placed on Senior District Judge McAvoy's dismissal calendar.  In response to the Order to Show Cause, Hudson submitted an Affidavit in Opposition; attached to that Opposition was the delinquent Status Report.  Dkt. No. 35, Paul S. Hudson, Esq., Aff., dated Nov. 29, 2006; *see also* Dkt. No. 42-2 (same), Ex.

In sum, Attorney Hudson averred that:

¶ 15    he prepared a status report on July 21, 2006 and then called our Chambers to advise of the Bankruptcy Court's Decision and ask for consent to file his Status Report in hard copy.  Hudson was advised that we could not consent to such filing without a court order;

5

¶ 16    he next attempted to obtain ECF status by filling out the online forms but did
not receive back the proper notice from the Clerk of the Court;

¶ 17    concomitantly, his computer became infected with a virus;

¶ 18    he then asked a cooperating law firm to electronically file his Status Report,
since he does not regularly practice before this Court, but due to some
miscommunication that effort failed; and

¶ 20    he attached the Status Report to his Affidavit in Opposition to the District
Court's Motion, further arguing that there was no prejudice to Defendant.

Dkt. No. 42-2, Hudson Aff., dated Nov. 29, 2006.

Senior District Judge McAvoy found Hudson's excuses without merit but would not levy any

sanctions against him because of his assertion that the had contacted this Court's Chambers at the

time the Status Report was due.  Dkt. No. 33 at p. 3.  Hence, Judge McAvoy referred the matter to

this Court to determine whether monetary damages should be imposed.  *Id.*

## II. DISCUSSION

### A.  Stay of Proceedings

Previously both parties asked the District Court to stay this matter because of impending

Bankruptcy rulings on Hudson's objections to the IRS claim, Dkt. Nos. 31 & 32, which was granted,

Dkt. No. 33.  As stated above, the Bankruptcy Court's Decision and Orders are pending on appeal

before Senior District Judge Scullin.  While the IRS wishes the stay be continued pending a

determination of the appeal, Hudson wants the stay lifted, noting that this litigation has continued

for more than a decade and an expeditious resolution of these matters should be rendered as soon

as possible.  Dkt. No. 39 at p. 2.

From the time the parties asked the District Court to stay the case until now, nothing has

changed and the reasons for granting the stay remain in effect.  Because the Bankruptcy Court

Orders remain on appeal, the parties' *status quo*, in this and the bankruptcy case, has not been

altered in any fashion and should remain as such notwithstanding Hudson's current importune for

an expedited disposition.

Hudson claims that litigating both of these cases is draining the resources of the estate and the estate cannot be closed if the IRS continues to litigate even though two courts have primarily found against it. Neither of Hudson's arguments are persuasive. We must remind Hudson that her Attorney husband initiated the bankruptcy matter, as she has done here, and filed objections to the IRS claim in bankruptcy court which has triggered in some respect the continuous nature of that litigation, and invariably this case has been prolonged by virtue of the stay pending a final resolution of the bankruptcy matter; thus the compounding of expenses. We would also be remiss if we ignored the IRS' entitlement to exercise all of the legal rights afforded it in this and the bankruptcy case. This insistence on exercising these legal rights have contributed, as well, to this protracted litigation. The bankruptcy matter must be concluded before this litigation can proceed. Therefore, the amount of expenditures and the consumption of time, under these circumstances, are not sufficient reasons to lift the stay.

We recommend that the Request for the Stay to be Lifted be **denied** and the Stay remain until the bankruptcy matter has been appropriately concluded.

### B.  Consolidation

Again, the parties disagree on whether the bankruptcy appeal and this matter should be consolidated. Although there are currently two related matters before two different District Judges, apparently arising out similar facts and issues, one is an appeal and the other litigation is slated for a trial resolution. As previously noted, integrated within the "same facts and issues" argument is the notion that the Bankruptcy Court's November 2004 Order is premised upon Senior District Court Judge McAvoy's reasoning in his March 25, 2004 Order. *See* Dkt. No. 39 at p. 2 ("Judge McAvoy

has already ruled on the issue of pre-settlement interest and that decision has been followed by Bankruptcy Judge Littlefield[.]"), & Dkt. No. 40 at p. 2 ("[T]he Bankruptcy Court . . . adopt[ed] the reasoning of the District Court as to the interest issue.").

Consolidation is a "valuable and important tool of judicial administration." *Consorti v. Armstrong World Indus., Inc*., 72 F.3d 1003, 1006 (2d Cir. 1995), *vacated on other grounds*, 518 U.S. 1031 (1996). The authority to consolidate lawsuits is found in the Federal Rules of Civil Procedure:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

FED. R. CIV. P. 42(a).

It is commonly understood that this Federal Rule gives broad discretion to the trial judge to consolidate legal actions, *sua sponte*. *Devlin v. Transp. Commc'n Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (noting that a court can act *sua sponte*); *Johnson v. Celotex Corp*., 899 F.2d 1281, 1284 (2d Cir. 1990). In fact, there generally appears to be a default to consolidate actions where judicial economy is concerned. *Johnson v. Celotex Corp.,* 899 F.2d at 1284 (finding that "courts have taken the view that considerations of judicial economy favor consolidation"); *Bank of Montreal v. Eagle Assocs*., 117 F.R.D. 530, 532 (S.D.N.Y. 1987) ("[C]onsiderations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event.") (citations omitted). Rule 42 is essentially "invoked to expedite trial and eliminate unnecessary repetition and confusion." *Delvin v. Transp. Commc'n Int'l Union*, 175 F.3d at 130 (citations omitted). Further, another primary and indisputable objective of consolidation is to prevent separate actions from producing conflicting results. *OHM Remediation Servs. Corp. v. Hughes Envt'l Sys*., *Inc.*, 952 F. Supp. 120,

8

121 (N.D.N.Y. 1997) (citing *Bank of Montreal v. Eagle Assocs.*, 117 F.R.D. at 533). And yet, this

blanket discretion does require courts to consider

> [w]hether the specific risks of prejudice and possible confusion [are] overborne by
> the risk of inconsistent adjudications of common factual and legal issues, the burden
> on parties, witnesses, and available judicial resources posed by multiple lawsuits, the
> length of time required to conclude multiple suits as against a single one, and the
> relative expense to all concerned of the single-trial, multiple-trial alternatives. . . .
> When considering consolidation, a court should also note that the risks of prejudice
> and confusion may be reduced by the use of cautionary instructions to the jury and
> verdict sheets outlining the claims of each plaintiff.

*Johnson v. Celotex Corp.*, 899 F.2d at 1285 (citations omitted);

Consideration of convenience and economy sometimes has to yield to the paramount concern for

a fair and impartial trial. *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993); *Bank of*

*Montreal v. Eagle Assocs.*, 117 F.R.D. at 532 (noting that confusion and prejudice may be the results

of an unwary consolidation). Moreover, "efficiency cannot be permitted to prevail at the expense

of justice - consolidation should be considered when 'saving of expense and gains of efficiency can

be accomplished *without sacrifice of justice*.'" *Devlin v. Transp.*, 175 F.3d at 130 (quoting *Consorti*

*v. Armstrong World Indus. Inc.*, 72 F.3d at 1007) (quotation and emphasis in original). That

paramount concern proscribes that courts not succumb to "[t]he systemic urge to aggregate [similar]

litigation [which would] trump our dedication to individual justice, and we must take care that each

individual plaintiff's - and defendant's - cause not be lost in the shadow[s][.]" *In re Brooklyn Navy*

*Yard Asbestos Litig.*, 971 F.2d 831, 853 (2d Cir. 1992) (cited in *Malcolm v. Nat'l Gypsum Co.*, 995

F.2d at 350) (noting that courts should be "mindful of the dangers of a streamlined trial process in

which testimony is curtailed and jurors assimilate vast amounts of information); *see also Kelly v.*

*Kelly*, 911 F. Supp. 66, 69 (N.D.N.Y. 1996) (for the proposition that the court must balance the

efficiency concerns against the potential for prejudice); *Solvent Chem. Co. ICC Indust., Inc. v. E.I.*

*Dupont De Nemours & Co.*, 242 F. Supp. 2d 196, 221 (W.D.N.Y. 2002); *Erwin-Smith v. K-mart Corp.*, 1999 WL 429505, at *1 (N.D.N.Y. June 22, 1999).  Hence, courts must examine the "specific underlying facts" with "close attention" before ordering consolidation. *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993).  Furthermore, the burden rests with the party moving for consolidation to not only show the commonality of facts and law, *Sidari v. Oleans County*, 174 F.R.D. 275, 281 (W.D.N.Y. 1996), but to convince the court that there would not be any unnecessary delays or confusion, *Kelly v. Kelly*, 911 F. Supp. at 69 (finding that consolidation may burden the parties, the court, and the jury "with an over complication of issues and necessary instructions").

Hudson's chief argument in support of consolidation is that there is the possibility of conflicting decisions on the issues in these cases if not granted.  Dkt. No. 39 at p. 2.[3]  Much like her argument for lifting the stay, because Judge McAvoy has already decided the pre-settlement interest issue, there is a fear that Judge Scullin could very well stake a contrary position, thereby creating divergent rulings.  And, by directing this appeal to Judge McAvoy, considering that he has already ruled on the issue, the appeal would be addressed much more quickly, reducing cost and time, and eliminating the possibility of contrary rulings.

On the other hand, the IRS argues that cases are normally consolidated for a joint determination and not to accord a party who has prevailed in one case or one leg of multi-faceted litigation with an advantage in the other.  According to the IRS, transferring the bankruptcy appeal to Judge McAvoy who has already decided a substantially similar issue would cause an unfair advantage.  Further, the IRS claims that the consolidation in this case would cause confusion and

---

[3] Hudson's reliance upon FED. R. CIV. P. 20 and 21 are misplaced. Dkt. No. 39. These two sections deal with joinders and misjoinders of parties and neither is an issue before this Court. FED. R. CIV. P. 42 is the appropriate statute when considering consolidation. Therefore Rules 20 and 21 will not be considered.

possibly prejudice.  Continuing, the IRS contends that it is unprecedented to consolidate an appeal within the District Court's appellate realm (bankruptcy court to district court pursuant to 26 U.S.C. § 158(a)), which is akin to a mid-level appeals courts, with a pending trial court matter.  And, lastly, in its view, the Bankruptcy and District Court cases do not present common questions of law and fact even though Bankruptcy Judge Littlefield followed Judge McAvoy's reasoning on the accrued interest issue.  Dkt. No. 40.

We agree with the IRS that it is unprecedented to consolidate an appeal and a trial matter and such consolidation would be treading on perilous ground.  Although the Bankruptcy and this District case have a common theme and core, we are not certain that they are so inextricably interlocked on every facet to authorize consolidation.  Just because two cases are related does not necessarily portend that they should be co-joined.  We should not succumb therefore to a systemic urge to aggregate similar litigation for the sole purpose of saving time and money.  There are times, such as this, where convenience and cost have to yield to the principles of a fair and impartial trial and appeal.  The last thing we would want to do is compromise or sacrifice justice for either party by rushing in and consolidating without appreciating all of the ramifications and consequences.  We agree that consolidation would breed confusion and risk prejudice.  On balance, we are more persuaded by the IRS' arguments than Hudson's and thus, Hudson has failed to meet her burden. Therefore, we recommend that Plaintiff's Motion for Consolidation be **denied**.

### C.  Sanctions

Senior District   Judge McAvoy referred this matter to the Court to consider whether monetary sanctions should be imposed pursuant to FED. R. CIV. P. 16(f).  Pursuant to Judge McAvoy's March 23, 2006 Order, Attorney Hudson was required to submit a Status Report on July

24, 2006. Hudson failed to do so. Judge McAvoy would have considered the issue of sanctions but for Attorney Hudson's representation that he called our Chambers when the Status Report was due. Not knowing the veracity of such a claim, it is understandable why Judge McAvoy would forego imposing sanctions and hand off the matter of sanctions to us for a Report and Recommendation inasmuch as we would be in a better position to confirm or challenge Attorney Hudson's veracity. Now we must consider Attorney Hudson's averments and excuses in the context of Rule 16(f).

Rule 16(f) reads as follows:

> If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

FED. R. CIV. P. 16(f); *see also Ashlodge, Ltd. v. Hauser*, 163 F.3d 681, 683 (2d Cir. 1998) (ruling that a court may impose sanctions, under Rule 16(f), when an attorney disobeys a scheduling or pretrial order).

We must remember that a scheduling order exists to enable the court to manage the conduct and disposition of cases, and should not be ignored blithely, *Bernstein v. Bernstein*, 1993 WL 466402, at *1 (E.D.N.Y. Aug. 13, 1993); when they are sanctions as serious as dismissal of the case may be in order. *Rivera v. Bushey*, 2007 WL 1677909 (N.D.N.Y. Jan. 18, 2007). Since Rule 16(f) has incorporated portions of FED. R. CIV. P. 37(b)(2)(B), said sanctions should be levied consistent with that civil rule's principles. *GSGSB, Inc. v. New York Yankees*, 122 F.3d 1056, 1997 WL 383543, at *5 (2d Cir. 1997) (unpublished opinion). Sanctions pursuant to Rule 16(f), much like Rule 37(b), must be based upon an explicit court order. *Salahuddin v. Harris*, 782 F.2d 1127, 1133 (2d Cir.

1986). Now that Rule 16(f) expressly provides for the impositions of sanctions for disobedient parties and/or attorneys, we turn to some of the principles of sanctions that have developed from Rule 37(b)(2)(B). FED. R. CIV. P. 16(f) Advisory Committee Notes.

Sanctions serve several purposes: 1) to ensure that the offending party will not be able to profit from the failure to comply; 2) to provide a strong deterrence to the non-compliant party and to others in the public; and 3) to secure compliance with an order. *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979); *Trehern v. OMI Corp. et al.*, 1999 WL 47303, at *8 (S.D.N.Y. Feb. 1, 1999). A spectrum of sanctions are available ranging from the mildest, such as, reimbursment for expenses, to the harshest, an order of dismissal or default. *Cine Forty-Second Street Theatre Corp.*, 602 F.2d at 1066; *see also Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d Cir. 2004).

The imposition of sanctions under Rule 37 is within the discretion of the court. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (citing *Selletti v. Carey*, 173 F.3d 104, 110 (2d Cir. 1999)); *see also Valentine v. Museum of Modern Art*, 29 F.3d at 49; *Scott v. Town of Cicero*, 1999 WL 102750, at *2 (N.D.N.Y. Feb. 24, 1999) (Munson, J.). Before imposing sanctions the court may consider: (1) the history of the party's failure to comply with court orders; (2) whether the party violating the order was given ample time to respond; (3) the effectiveness of alternative sanctions; (4) whether the non-complying party was warned and given an opportunity to argue the impending sanctions; (5) the prejudice to the adversary caused by the failure to comply; (6) whether the document at issue would normally be readily obtainable; and (7) the extent of the party's personal responsibility. *Bambu Sales, Inc. v. Ozak Trading Inc*., 58 F.3d 849, 852-54 (2d Cir. 1995); *Momah v. Messina Mem'l. Hosp. & Bond*, 1998 WL 129045, at *5 (N.D.N.Y. Mar. 6,

13

1998) (quoting *Burke v. ITT Automotive, Inc.*, 139 F.R.D. 24, 33 (W.D.N.Y. 1991)).

The imposition of sanctions is a drastic remedy and should be considered when it has been established that a party's noncompliance or failure was due to wilfulness, bad faith or a callous disregard of the responsibilities mandated by the Federal Rules of Civil Procedure or a court order. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 639-40 (1976) (citing *Societe Internationale v. Rogers*, 357 U.S. 197, 212 (1958)); *State of New York v. Almy Brothers, Inc.,* 1998 WL 57666, at *9 (N.D.N.Y. Feb. 4, 1998) (McCurn, J); *Hinton v. Patnaude*, 162 F.R.D. 435, 439 (N.D.N.Y. 1995) (McAvoy, J) (flagrant bad faith).  Moreover, gross negligence on the part of a non-compliant party can suffice as wilful and flagrant bad faith, and in some instances, ordinary negligence may be sufficient as well.  *Cine Forty-Second Street Theatre Corp.*, 602 F.2d at 1068 (deliberate tactical intransigence and/or gross negligence); *see also Residential Funding Corp.*, 306 F.3d at 99 (ordinary negligence); *Burks v. Eagan Real Estate Inc.*, 742 F. Supp. 49, 51-52 (N.D.N.Y. 1990) (drastic remedy of a default judgment should not be considered unless the failure to comply was the result of bad faith or gross negligence).

In order for an act to constitute wilfulness, the court's order must be clear and there is no misunderstanding of the intent of the order, and, further, there is no other factor beyond the party's control which contributed to the non-compliance.  *Bambu Sales*, 58 F.3d at 852-53.  And a "'party's persistent refusal to comply with a discovery order' presents sufficient evidence of willfulness or bad faith."  *Handwerker v. AT&T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y. 2002) (quoting *Monaghan v. SZS 33 Assoc., L.P.*, 148 F.R.D. 500, 509 (S.D.N.Y. 1993) (noting that "unexcused failure to comply with two discovery orders warranted dismissal")).  However, this statute permits the saving grace of substantial justification or harmlessness to blunt the impact of sanctions.  *Grdinich v.*

*Bradlees*, 187 F.R.D. 77, 79 (S.D.N.Y. 1999) (citing *Hinton v. Patnaude*, 162 F.R.D. at 439)). Substantial justification in this context means "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Jockey Int'l, Inc. v. M/V "Leverkusen Express,"* 217 F. Supp. 2d 447, 452 (S.D.N.Y. 2002) (quoting *Henrietta D. v. Giuliani*, 2001 WL 1602114, at *5 (E.D.N.Y. Dec. 11, 2001) (further citations omitted)).  There is no exception to honoring and respecting court orders. All litigants and litigators must comply and when they flout their obligation, they must suffer the consequences of such action.  *Baker v. Ace Advertisers' Serv. Inc.*, 153 F.R.D. 38, 40 (S.D.N.Y. 1992).

Attorney Hudson does not complain that Rule 16(f) is not the applicable statutory provision. In determining sanctions in this case, we concur, albeit indirectly, with Attorney Hudson that prejudice and/or delay should not be a basis.  In fact, they are not the gravamen on this discourse on sanctions.  The crux of the matter is whether there was an explicit order in place and a violation of that specific order had occurred.  Dkt. No. 42-2.  It is incontroverted that Attorney Hudson was compelled to provide a Status Report by an explicit order and if he failed to do so he was put on notice, which was exquisitely transparent, that he would be subject to Rule 16(f) sanctions.  *See supra* Part I.B at p. 5.  There should be no misunderstanding as to the intent of the Order.

Initially, we state that we harbor the same skepticism as Judge McAvoy as to whether Attorney Hudson has provided substantial justification for his commission or omission as it may relate to the March 23, 2006 Order.  Dkt. No. 32.  In his Affidavit, Attorney Hudson asseverates that on July 21, 2006, he called our Chambers rather than Judge McAvoy's Chambers to advise us that the Bankruptcy Court has issued a decision in the related case and to request consent to submit a

Status Report in hard copy.  Dkt. No. 42-2 at ¶ 15.  In his Memorandum of Law, Attorney Hudson

states that "a verbal status report was telephoned to [our] chambers . . . timely."  Dkt. No. 41 at p.

1. No one in this Chambers has any recollection accepting a call from Attorney Hudson wherein he

gave us a verbal Status Report.[4]  Had there been a verbal Status Report, as claimed, it is our practice

to make a chamber note on the case docket to that effect.  As such, the internal case docket does not

reflect such a call.  We would agree, however, that had Attorney Hudson asked for consent to file

a hard copy Status Report as opposed to electronically, my clerks would have advised him that they

could not consent without a court order.  Moreover, if we had the province to extend permission to

file a hard copy in this case, it would have been denied.  We had already issued an Order, dated June

21, 2004, exempting Attorney Hudson from electronic filing "for the last time."  Dkt. No. 26.  Under

the circumstances, we would have remained steadfast and declined Attorney Hudson's application

to avoid his responsibilities under ECF.  However, what is more disquieting about this purported

phone call to our Chambers, is that there was no need or obligation for such a call to us.  We did not

issue the Order directing the filing of a Status Report.  Judge McAvoy issued that Order and the call

should have been to his Chambers asking for permission to file a hard copy of the Status Report and

not to us.  If my clerk advised Attorney Hudson that we needed an order before consenting, logically

you would conclude that a subsequent request would have been rightfully made to the District Court

that issued the previous Order.  Apparently none was made.

Next, Attorney Hudson avers "that he attempted to obtain ECF status by filling out the online

forms which would contact him by email.  However, [he] did not receive any email response and

---

[4] Chamber staff is small and any phone call to Chambers would have been accepted by only three
persons other than yours truly.  Yours truly spoke with his staff and no one recalls this purported phone call
and there is no notation on anyone's phone pad that such a call was received.

was advised by the Clerk Office that they had no control over the system." Dkt. No. 42-2 at ¶ 16. However, in his Memorandum of Law, Attorney Hudson asserts that there was an "unwillingness of the magistrate judge's chambers or court clerk to permit filing of the written report in paper form." Dkt. No. 41 at p. 2. We do not understand what Attorney Hudson is attempting to impute here. He has not made himself clear as to this assertion. Is he suggesting that he attempted to file the Status Report electronically and did not receive, in return, a electronic notification? Is he also suggesting that the Clerk's Office, realizing that there was a glitch with the system, refused to permit him to file a hard copy of the Status Report? It seems inconceivable to us that the Clerk's Office, who has the primary authority to manage the ECF system, would deny anyone permission to file a legal document timely when the system has failed. We are familiar with the Clerk Office's practice and they routinely grant or seek court permission to parties to serve their legal papers timely if there is a systematic malfunction, whether at the sender's or receiver's end. We have never heard of the Clerk's Office denying a party an opportunity to file legal papers timely and in conventional format when electronic filing has gone awry, without first conferring with the court. In this context, we note that on February 21, 2006, Attorney Hudson electronically filed a Letter-Motion without any difficulty. Dkt No. 32. In conjunction with this ECF filing debacle, Attorney Hudson claims that his "main computer became infected with a virus and [he] was unable to get on line[.]"[5] Dkt. No. 42-2 at ¶ 17. For this reason alone, the Clerk's Office would have accommodated Attorney Hudson and permitted or sought court permission for conventional filing of papers. Credulity has been stretched beyond recognition by these claims.

---

[5] This is not the first time that Attorney Hudson has claimed that a computer virus, among other events, has contributed to his belated filing of legal papers. *See* Dkt. No. 21, Pl.'s Reply Affirmation, dated Sept. 23, 2003, at ¶ 2.

Juxtaposed to all of the problems stated above, Attorney Hudson avers that he asked another firm to electronically transmit his papers for him. Dkt. No. 42-2 at ¶ 18. But based upon miscommunication that he just "received recently," his Status Report was not filed electronically. This asseveration lacks details and concerns us however. We must ask since it has not been provided: what miscommunication; when did this miscommunication occur; and why didn't Attorney Hudson react more swiftly and speak with either the Clerk's Office or Judge McAvoy's Chambers about this issue. It is unfathomable as it is improbable that an attorney who volunteers to assist another attorney to properly file his papers electronically would fail to promptly inform that his mission had failed so that another timely resolution could be utilized.

Lastly, our disbelief has been elevated upon reviewing the July 21, 2006 Letter which was attached to Attorney Hudson's Opposition to the Order to Show Cause. Dkt. No. 42-2. In fact, its submission is rather eccentric. This purported Status Report is replete with handwriting in the margins, phrases lined out, words added and deleted. This document constitutes at best a draft. It is hard to accept that this is the document Attorney Hudson attempted to file with the Court for more than four months. It is unimaginable that Attorney Hudson was attempting to transmit such a document electronically. And, if it was Hudson's intention to submit this document in this redacted, unprofessional, and slovenly manner as early as July 21, 2006, three days before it was due, it would have been a first for him. This Court has perused every legal document Attorney Hudson has filed in this and the bankruptcy case and none are infirm with such imperfections. In fact, we do not discern any handwriting on any of these others documents. All of this ascribes to our mighty suspicion that Attorney Hudson was grossly negligent, if not intransigent, in complying with Judge McAvoy's Order. *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d

18

1062, 1068 (2d Cir. 1979); *Burks v. Eagan Real Estate Inc.*, 742 F. Supp. 49, 51-52 (N.D.N.Y. 1990).

Scheduling orders should not be ignored blithely nor trifled with, without some peril or consequence. *Bernstein v. Bernstein*, 1993 WL 466402, at *1 (E.D.N.Y. Aug. 13, 1993). Such lack of attention to details and responsibilities pursuant to this Court Order warrants sanctions. We find none of Hudson's excuses plausible and they do not rise to the level of a substantial justification. To the contrary, it is implausible that all of these events could have occurred to prevent a remotely timely filing of the Status Report. The credibility of all of these coincidences bearing down on a timely filing of a Status Report is too much to accept. All of the above constitutes inexcusable conduct. We concur with the District Court that dismissal of the action is not warranted under these circumstances. Because said late filing did not cause any delay since this case is already stayed, and no prejudice has been visited upon the IRS, the mildest form of sanctions is appropriate. Accordingly, we recommend that Attorney Hudson be sanctioned in the amount of $150.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Hudson's Motion to Lift the Stay and to Consolidate the Bankruptcy Appeal with this Case (Dkt. No. 39) be **denied**; and it is further

**RECOMMENDED**, that the March 23, 2006 Order (Dkt. No. 33) shall remain in effect; and it is further

**RECOMMENDED**, that Attorney Paul S. Hudson pay the sum of $150 as a sanction and that he be directed to pay said sanction within thirty (30) days from the District Court's Order to the Clerk of the Court.

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

**IT IS SO ORDERED**.

Date:   March 27, 2007
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge

20